Slip Op. 11-157

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **LEGACY CLASSIC FURNITURE, INC.,** | |
| Plaintiff, | **Before:    Gregory W. Carman, Judge** |
| v. | **Court No. 10-00352** |
| **UNITED STATES,** | |
| Defendant. | |

## OPINION & ORDER

[Commerce's scope determination sustained in part and remanded in part]

Dated: December 15, 2011

*Mark E. Pardo, Max F. Schutzman,* and *Andrew T. Schutz*, Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt, of Washington, DC, for plaintiff.

*Douglas G. Edelschick*, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for defendant, and *Nathaniel J. Halvorson*, Attorney, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, of counsel.  With them on the briefs were *Tony West*, Assistant Attorney General, *Jeanne E. Davidson*, Director, *Patricia M. McCarthy*, Assistant Director.

CARMAN, JUDGE: Plaintiff Legacy Classic Furniture, Inc. ("Legacy") brought this case to

challenge a determination by the United States Department of Commerce

("Commerce") that Legacy's Heritage Court Bench is within the scope of the

antidumping duty order on wooden bedroom furniture from China ("WBF Order").

For the reasons set forth below, Commerce's determination is sustained in part and

remanded in part.

BACKGROUND

The product in question is Legacy's Heritage Court Bench—a piece of furniture that serves both as a storage unit and a seating bench.  It is described as "a backless wooden seating bench measuring 50 inches wide by 19 inches tall by 20 inches deep." Wooden Bedroom Furniture from the People's Republic of China: Scope Ruling on Legacy Classic Furniture, Inc.'s Heritage Court Bench ("Final Scope Ruling"), App. to Pl.'s R. 56.2 Mot. for J. on the Agency Rec. (Pl.'s App.") Ex. 1 at 2 (Nov. 22, 2010).  The body of the bench "is made from solid hardwood with Okume Mahogany veneers and a cocoa brown wood finish."  Id.  It has a top "that consists entirely of a padded leather surface," and is attached by hinges to the base, which has a cedar-lined interior.  Id.

According to its own terms, the WBF Order covers furniture "made substantially from wood products," which is "generally, but not exclusively, designed, manufactured, and offered for sale in coordinated groups, or bedrooms."  Notice of Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order: Wooden Bedroom Furniture from the People's Republic of China, 70 Fed. Reg. 329, 332 (Jan. 4, 2005).  The subject merchandise explicitly includes "chests," which are defined as "typically a case piece taller than it is wide" which "can either include drawers or be designed as a large box incorporating a lid."  Id.  The WBF Order

explicitly excludes "benches . . . and other seating furniture."  Id.

Commerce evaluated whether Legacy's Heritage Court Bench was within the

scope of the WBF Order according to the factors and procedure set out in 19 C.F.R.

§ 351.225(k).  Final Scope Ruling at 4.  This regulation specifies that when Commerce is

"considering whether a particular product is included within the scope of an order," it

will first "take into account" the following factors: "(1) The descriptions of the

merchandise contained in the petition, the initial investigation, and the determinations

of the Secretary (including prior scope determinations) and the Commission."  19 C.F.R.

§ 351.225(k)(1).  Only when these so-called "(k)(1) factors" are not dispositive is

Commerce to proceed to consider the "(k)(2) factors": "(i) [t]he physical characteristics

of the product; (ii) [t]he expectations of the ultimate purchasers; (iii) [t]he ultimate use of

the product; (iv) [t]he channels of trade in which the product is sold; and (v) [t]he

manner in which the product is advertised and displayed."  Id. § 351.225(k)(2).

I.        Commerce's Consideration of the (k)(1) Factors

Commerce determined that it was unable to complete the scope determination

upon consideration of the (k)(1) factors alone.  Final Scope Ruling at 8.  Specifically, it

determined that Legacy's Heritage Court Bench had characteristics of both a

chest—which would be included within the scope of the order—and also a

bench—which would be excluded from the order.  Id.  A chest is defined in the WBF

Order as "typically a case piece taller than it is wide featuring a series of drawers and

with or without one or more doors for storing clothing.  The piece can either include

drawers or be designed as a large box incorporating a lid."  70 Fed. Reg. at 332 n.5.

Reasoning that Legacy's Heritage Court Bench met the description of a "large box

incorporating a lid," Commerce concluded that it qualified as a chest, albeit an atypical

chest.  Id. at 6.  The agency also acknowledged that the product "has physical

characteristics which allow it to be used for seating, characteristics that are shared by

benches."  Id.  The agency concluded that upon "examination of the records established

by [Commerce] and the ITC in the underlying investigation, and a past scope

determination, . . . the record of the WBF proceeding does not contain sufficient

information to permit [Commerce] to determine whether the Heritage Court Bench is

covered by the scope of the WBF Order without further analysis."  Id. at 8.  In other

words, Commerce found the (k)(1) factors not to be dispositive.

II.      **Commerce's Consideration of the (k)(2) Factors**

         The agency then turned to consider the factors set out in 19 C.F.R.

§ 351.225(k)(2).  The following is a summary of Commerce's conclusions on each of the

(k)(2) factors.

         **A.   Physical Characteristics of the Product**

         Commerce once again noted that because the Heritage Court Bench is "a large

box with a lid," it fits within the definition of a chest included in the WBF Order.  Final

Scope Ruling at 9.  The agency also considered whether the product meets the definition

of a bench.  Because the WBF Order uses but does not define the term "bench", the

agency considered the definitions of bench provided by Legacy: "1) a seat without a

back, usually a long oval or oblong; 2) a long seat for more than one person; 3) a long,

usually backless seat; and 4) a long seat, with or without a back, usually of wood."  Id.

at 9-10.  Commerce reasoned that "these definitions are unhelpful here because they do

not address the storage components of the Heritage Court Bench, which is a critical

consideration in its treatment under the WBF order," and concluded that the physical

characteristics of the product indicate that the product falls "within the definition of a

chest as defined by the scope of the WBF order."  Id. at 10.

      **B.   Expectations of the Ultimate Purchasers**

      Commerce found that there was "no direct evidence on the record regarding

the expectations of the ultimate purchasers," but nevertheless concluded that this factor

pointed towards including Legacy's product within the scope of the WBF Order.  Id. at

10-11.  The agency decided that the cedar-lined nature of the interior of the chest

indicated it was intended to be used for clothing storage, which would be consistent

with use in bedrooms.  Id. at 10.  Commerce reasoned that although the product has a

padded top which purchasers "may also expect to use" for seating, the box design and

cedar lined nature of the storage unit were its defining characteristics, because

"[o]therwise, it is reasonable to assume customers would simply buy a bench with no

storage capacity." Id. at 11.

### C.   Ultimate Use of the Product

As with the previous factor, Commerce again found "no direct evidence"

regarding the ultimate use of the Heritage Court Bench, but nevertheless concluded that

this factor also pointed towards the inclusion of Legacy's product within the scope of

the WBF Order. Id. at 11–12. Commerce notes that on Legacy's website, the product is

described as a "cedar lined leather storage bench," and states that "**the Department's**

**impression** is that the piece was designed with a focus on storing items, and that the

leather top was incorporated for additional functionality and character." Id. at 11

(emphasis added). Commerce concluded that the product's "cedar-lined storage area

strongly indicates that the intended ultimate use of the product is storage." Id. at 12.

### D.   Channels of Trade in Which the Product is Sold

On this factor, Commerce concludes that there is "no evidence that the

Heritage Court Bench is sold through different channels of trade than WBF." Id.

Because Legacy appears to sell both subject merchandise and non-subject merchandise

on its website, the agency succinctly concludes that this factor is not dispositive on the

scope determination. Id.

### E.   The Manner In Which The Product is Displayed and Advertised

On this final factor, Commerce observes that Legacy sells the Heritage Court Bench on its website "in the same section as benches," but also "as part of its bedroom furniture line." Id. at 13.  The agency also notes that on several websites, including Legacy's, the product's cedar-lined storage component "is prominently advertised and displayed," and therefore concludes that "Legacy displays and advertises the Heritage Court Bench as piece [sic] of furniture that is consistent with the definition of subject chests." Id.

Based upon the foregoing analysis, Commerce concludes that "the weight of the evidence on the record supports the finding that the Heritage Court Bench is included in the scope of the WBF order**."**  Id. at 14.

### JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1581(c) and reviews the determinations of the agency according to the standard set out in 19 U.S.C. § 1516a(b)(1)(B) ("[t]he court shall hold unlawful any determination, finding or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law.").

## DISCUSSION

**I.        Commerce's Determination With Respct to the (k)(1) Factors Is Sustained**

Commerce's determination that the factors set out in 19 C.F.R. § 351.225(k)(1) are not dispositive on the scope determination is supported by substantial evidence on the record and is otherwise in accordance with law, and is therefore sustained.  The evidence on the record supports the view that Plaintiff's Heritage Court Bench has characteristics of both a bedroom chest, which would be within the scope of the order, and also of a bench, which would not be within the scope of the order.  Because the Court sustains the agency's determination that the (k)(1) factors were inconclusive, the scope determination must be completed in consideration of the (k)(2) factors.

Legacy's argument that the Heritage Court Bench must necessarily be excluded from the scope of the WBF Order according to the language of the scope alone is unpersuasive.  Legacy contends that because the WBF Order contains an unqualified exclusion of "benches" and "other seating furniture," if a product is a bench or a piece of seating furniture, it cannot possibly fall within the scope of the order.  (Br. In Supp. of Pl.'s Rule 56.2 Mot. for J. Upon the Agency R. ("Pl.'s Mot.") 9–17.)  Plaintiff's argument ignores, however, the possibility that a product satisfies the definitions of items both within and without the scope of the order.  The WBF Order enumerates the types of chests that are within its scope, and the products thus identified are included *without*

*qualification*.  Specifically, the order covers "wooden bedroom furniture," and states that

"[t]he subject merchandise includes . . . chests," which are defined to explicitly include

the type "designed as a large box incorporating a lid."  70 Fed. Reg. at 332, 332 n. 5.

Because Legacy's product appears to fit this definition of a bedroom chest in addition to

meeting the definition of a bench, Commerce was correct in determining that the (k)(1)

factors were not dispositive on the scope determination.  When a scope determination is

sought for product that simultaneously meets the definition of items included and

excluded from the scope of an antidumping order, the scope determination cannot be

made solely upon resort to the (k)(1) factors.  19 C.F.R. § 351.225(k).

## II.        Commerce's Determinations With Respect to the (k)(2) Factors Are Set Aside

The Court finds that each conclusion Commerce made regarding the five

factors set out in 19 C.F.R. § 351.225(k)(2) is not supported by substantial evidence on

the record, and must be set aside.  Specifically, on the four factors that Commerce found

to support inclusion of Plaintiff's product within the scope of the WBF Order, the Court

finds that the record evidence cannot support such a conclusion.  Additionally, the one

factor that Commerce found inconclusive on the scope determination does not take into

account the breadth of the record evidence, and therefore cannot be sustained.  For the

reasons set forth below, the scope determination is remanded to Commerce for a

redetermination consistent with this opinion.

The Court will review the agency's conclusion on each of the five (k)(2) factors

sequentially.

### A.   Physical Characteristics of the Product

First, the logic Commerce employs to justify its conclusion that the physical

characteristics of Legacy's Heritage Court Bench bring it within the scope of the WBF

Order does not withstand scrutiny.  Simply put, Commerce acknowledges that

Plaintiff's product meets the *prima facie* definitions of both a chest and a bench, but

decides that the features that are not essential to a bench prohibit regarding the product

as a bench.  Ergo, the product is more of a chest, within the scope of the WBF Order.

However, the same reasoning could be employed to opposite effect: the agency might

*just as well* have concluded that the product meets the definition of a chest, but that the

features that are not essential to a chest (such as a padded leather seat) prohibit

regarding the product as a chest.  The Court can find no justification in Commerce's

analysis, nor any evidence on the record to explain this asymmetry, and must therefore

remand for a redetermination.

Consistent with the Court's standard of review, the Court does not substitute

its own judgment for that of the agency, nor does the Court purport to tell Commerce

how it must ultimately regard this factor.  Perhaps Commerce will find that the product

equally meets the definitions of a chest and a bench, and that this factor is therefore

inconclusive.  Or perhaps Commerce will find that the product's seating characteristics

negate defining it as a chest, and that its storage characteristics negate defining it as a

bench, but similarly, that this factor is inconclusive.  Or perhaps the agency will reach a

different conclusion altogether.  As it stands, however, the conclusion that the physical

characteristics of Legacy's Heritage Court Bench warrant inclusion within the scope of

the WBF Order is not supported by substantial evidence on the record and otherwise in

accordance with law, and is therefore set aside.

      B.    **Expectations of the Ultimate Purchasers**

Commerce's reasoning with respect to the expectations of ultimate purchasers

suffers from the same flaw as the previous factor—arbitrariness.  While acknowledging

that some purchasers may intend to use the Heritage Court Bench for seating, the

agency pronounces that the product's storage capability is its most distinguishing

characteristic.  This *must* be so, according to the agency, because otherwise a purchaser

"would simply buy a bench with no storage capacity."  Final Scope Ruling at 11.  The

error in this logic is that, again,  the inverse is just as plausible.  Consumers simply

wishing to buy a bedroom chest for clothing storage need not purchase such an atypical

chest—an oblong product of appropriate seating height (19"), wider than it is tall, with a

built in padded leather seat.  Because the Court finds in Commerce's explanation no

rationale for its stated conclusion over this alternative, the Court must again remand for

redetermination.  The conclusion that the expectations of the ultimate purchasers

suggest Plaintiff's product falls within the scope of the WBF Order is not supported by

substantial evidence on the record and otherwise in accordance with law, and is

therefore set aside.

### C.    Ultimate Use of the Product

With respect to the third (k)(2) factor, the ultimate use of the product,

Commerce commits the same error for a third time.  Here, the agency candidly admits

that it based its decision on an "impression" that the piece was designed "with a focus

on storing items, and that the leather top was incorporated for additional functionality

and character."  Id.  This impression has no support on the record, at least no support

over and against the alternative—that the product was primarily designed as a seating

unit, with an added bonus of cedar-lined storage.  With no record evidence regarding

the actual ultimate use of the product, the agency's unsupported view that the product

is primarily a chest, rather than primarily a bench, requires a remand.

What makes the agency's conclusion on this third (k)(2) factor especially

curious is that Commerce criticizes the position advanced by Legacy *for the same reasons*

the Court now rejects Commerce's position.  Legacy had argued before the agency that

if the storage feature of the bench went unused, the product's primary purpose as

seating furniture could still be fulfilled.  Commerce responded that "[t]his reasoning is

not persuasive because the same claim can be made" in the other direction: "i.e., if the

seating function is not used, then it can still be used for storage." Id. at 12.  Remarkably,

Commerce then *endorses this alternative view as correct*, stating "that the intended

ultimate use of the product is storage," for no other reason than that the product has a

cedar-lined storage area.  Id.  To summarize, Legacy baldly asserted that the primary

purpose of the product was for seating, and Commerce rejected that, noting it could just

as easily be said that the primary purpose of the product was for storage.  Then,

Commerce baldly asserted that the primary purpose of the product was for storage,

failing to acknowledge that the primary purpose of the product might just as easily be

for seating.  Because the conclusion that the ultimate use of the product is for storage is

not supported by substantial evidence on the record and otherwise in accordance with

law, the Court must set it aside.

> **D.   Channels of Trade in Which the Product is Sold**

The fourth of the (k)(2) factors received the most cursory treatment, and

warrants a remand for more thorough consideration.  When considering the "channels

of trade" in which Legacy sells the Heritage Court Bench, Commerce appears to have

limited its view to only the sections of Legacy's website on which the product is sold.

But the record indicates that a number of third-party websites also offer the Heritage

Court Bench for sale.  Commerce acknowledged Legacy's argument that the product "is

offered for sale by retailers that sell no WBF subject to this order, i.e., seating furniture,"

but failed to consider these other retailers in reaching its conclusion.  Id.  Commerce's

conclusion—that the channels of trade is not dispositive on the scope ruling—is not

supported by substantial evidence on the record, as it appears to have been based on

just one of the many outlets through which the Heritage Court Bench is sold, and

ignores abundant additional record evidence on this question.  On remand, the agency

is directed to consider all record evidence regarding the channels of trade in which the

Heritage Court Bench is sold before determining whether this particular (k)(2) factor

has a bearing on the agency's scope ruling.

### E.   The Manner In Which the Product is Displayed and Advertised

On the final (k)(2) factor, Commerce's conclusion that the product is displayed

and advertised "as a piece of furniture that is consistent with the definition of subject

chests" does not take full view of all record evidence to the contrary.  Id. at 13.

Commerce does fairly acknowledge that the product is sold on Legacy's website "in the

same section as benches," as well "as part of [Legacy's] bedroom furniture line."  Id.

But the agency takes disproportionate notice of the display and advertisement of the

product's storage component, both on Legacy's website and on third party websites.  Id.

While accurate, this observation is incomplete.  On Legacy's website, for instance, the

Heritage Court Bench is fully described as a "Leather Storage Bench; Cedar lined; Lift

top." Pl.'s App. Ex. 7 at 1.  Both the cedar storage component and the leather top are

prominently displayed and advertised.  Similarly, on www.juststoragebenches.com, the

Heritage Court Bench is advertised according to its measurements and six prominent

features: "Durable wood construction[;] Handsome medium wood finish[;] Cushioned

seat with genuine leather upholstery[;] Lift-top with full-length piano and safety

hinges[;] Cedar-lined interior[;] Cutout base apron." Id. Ex. 9 at 2.  Once again, the

product is here sold both for its chest- and bench-like qualities.  Because the agency's

determination on this final factor fails to take into account record evidence that weighs

against the conclusion it reached, the agency's determination is not supported by

substantial evidence and otherwise in accordance with law, and must therefore be set

aside.

CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that Commerce's determination that the factors set out in 19

C.F.R. § 351.225(k)(1) are not dispositive of this scope determination is SUSTAINED,

and it is further

**ORDERED** that Commerce's determination that Legacy's Heritage Court

Bench falls within the scope of the WBF Order is SET ASIDE, and it is further

**ORDERED** that this case is remanded to Commerce with instructions to make

a redetermination that reconsiders each of the five factors set out in 19 C.F.R.

§ 351.225(k)(2) in light of the Court's opinion, and it is further

**ORDERED** that the stay entered by the Court on Plaintiff's motion for oral

argument (ECF No. 41) is hereby LIFTED, and it is further

**ORDERED** that Plaintiff's motion for oral argument (ECF No. 39) is hereby

DENIED, and it is further

**ORDERED** that the results of this redetermination on remand shall be filed no

later than **Thursday, February 16, 2012**, and it is further

**ORDERED** that Plaintiff may file comments on such remand results, not to

exceed 20 pages, and that such comments shall be filed no later than **Thursday, March**

**15, 2012**, and it is further

**ORDERED** that Defendant may file a reply to Plaintiff's comments, not to

exceed 15 pages, and that such reply shall be filed no later than **Thursday, March 29,**

**2012.**


                                         _____Gregory W. Carman_____
                                         Gregory W. Carman, Judge

Dated:   December 15, 2011
           New York, New York