Slip Op. 12-121

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **LEGACY CLASSIC FURNITURE, INC.,** | |
| Plaintiff, | **Before:**   **Gregory W. Carman, Judge** |
| v. | **Court No. 10-00352** |
| **UNITED STATES,** | |
| Defendant. | |

## OPINION & ORDER

[Commerce's *Remand Results* are remanded.]

Dated: September 19, 2012

*Mark E. Pardo, Andrew T. Schutz, Max F. Schutzman,* and *Nikolas E. Takacs,* Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt, LLP, for Plaintiff.

*Douglas G. Edelschick,* Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for Defendant, and *Nathaniel J. Halvorson,* Attorney, Office of the Chief Counsel for Import Administration, United States Department of Commerce, of counsel.  With them on the briefs were *Stuart F. Delery,* Assistant Attorney General, *Jeanne E. Davidson,* Director, *Claudia Burke,* Assistant Director.

**CARMAN, JUDGE:** Plaintiff Legacy Classic Furniture, Inc. ("Plaintiff" or "Legacy")

disputes the results of the first court-ordered remand to the United States Department

of Commerce ("Commerce") regarding a scope determination in the antidumping duty

order covering wooden bedroom furniture from China.  *Bedroom Furniture from the*

*People's Republic of China: Scope Ruling on Legacy Classic Furniture, Inc.'s Heritage Court*

*Bench* (Nov. 22, 2010) ("*Final Scope Ruling*"); *Notice of Amended Final Determination of*

*Sales at Less Than Fair Value and Antidumping Duty Order: Wooden Bedroom Furniture from*

*the People's Republic of China*, 70 Fed. Reg. 329 (Jan. 4, 2005) ("*WBF Order*").  Pursuant to

Plaintiff's motion for judgment on the agency record challenging Commerce's *Final*

*Scope Ruling*, the Court sustained in part and remanded in part this case in Slip Opinion

11-157.[1]

    In *Legacy I*, the Court sustained Commerce's determination that the factors set

forth in 19 C.F.R. § 351.225(k)(1)[2] are not dispositive but remanded for reconsideration

Commerce's determination that the factors set forth in 19 C.F.R. § 351.225(k)(2)[3] are

dispositive.  Accordingly, the Court set aside Commerce's determination that the

Heritage Court Bench fell within the scope of the *WBF Order* and instructed Commerce

to reconsider each of the factors listed under 19 C.F.R. § 351.225(k)(2) and to take into

account in its analysis all of the evidence on the record.  Commerce issued its *Final*

*Results of Redetermination Pursuant to Court Order* (Mar. 26, 2012) ("*Remand Results*"),

affirming its original determination that the Heritage Court Bench is within the scope of

---

[1] *Legacy Classic Furniture v. United States*, 35 CIT ___, 807 F. Supp. 2d 1353 (2011) ("*Legacy I*"). The Court presumes familiarity with *Legacy I.*

[2] Referred to as "(k)(1) factors" hereinafter.

[3] Referred to as "(k)(2) factors" hereinafter.

the *WBF Order*.

Upon review of the *Remand Results,* upon further examination of the record,

and upon further consideration of the unique circumstances presented in this case, the

Court reconsiders its initial decision regarding the (k)(1) factors and remands to

Commerce to explain its policy where general language in the scope section of an

antidumping duty order can be read to include the product at issue but other language

in the scope section specifically excludes the product at issue.  The Court also remands

the (k)(2) factors because Commerce's conclusion in its *Remand Results* that the Heritage

Court Bench is more like a chest than a bench is not supported by evidence on the

record.

## BACKGROUND

The product at issue is Legacy's Heritage Court Bench – a piece of furniture

that both sides agree serves simultaneously as a seating bench and a storage unit.  It is

described as "a backless wooden seating bench measuring 50 inches wide by 19 inches

tall by 20 inches deep."  *Final Scope Ruling* at 2.  The body of the bench is made from

"solid hardwood with Okume Mahogany veneers and a cocoa brown wood finish."  *Id.*

It has a top that consists "entirely of a padded leather surface," is attached by hinges to

the base, and has a cedar-lined interior storage area.  *Id.*  The scope of the *WBF Order*

includes only specified chests but explicitly excludes all seating furniture, including

benches.  *Id.* at 3.

Commerce evaluated whether the Heritage Court Bench was within the scope

of the *WBF Order* according to the factors and procedure set out in 19 C.F.R.

§ 351.225(k).  *Final Scope Ruling* at 4.  This regulation specifies that when Commerce is

"considering whether a particular product is included within the scope of an order," it

will "take into account" the following factors: "(1) The descriptions of the merchandise

contained in the petition, the initial investigation, and the determinations of the

Secretary (including prior scope determinations) and the Commission."  19 C.F.R.

§ 351.225(k)(1).  Commerce determined that the (k)(1) factors were not dispositive.  *Final*

*Scope Ruling* at 6.  Thus Commerce proceeded to the next subsection of factors: "(i) [t]he

physical characteristics of the product; (ii) [t]he expectations of the ultimate purchasers;

(iii) [t]he ultimate use of the product; (iv) [t]he channels of trade in which the product is

sold; and (v) [t]he manner in which the product is advertised and displayed."  19 C.F.R.

§ 351.225(k)(2).  In its *Remand Results,* Commerce found that "the record is mixed with

respect to the criterion under 19 C.F.R. § 351.225(k)(2) (iv) and (v)," but "[did] not find

that this mixed record is enough to change the conclusions reached with respect to the

criterion under 19 C.F.R. § 351.225(k)(2)(i-iii)."  *Remand Results* at 18.

### STANDARD OF REVIEW

The Court has jurisdiction pursuant to 28 U.S.C. § 1581(c) (2006).  For scope

determinations, the Court sustains determinations, findings or conclusions of

Commerce unless they are "unsupported by substantial evidence on the record, or

otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).  Courts "look for a

reasoned analysis or explanation for an agency's decision as a way to determine

whether a particular decision is arbitrary, capricious or an abuse of discretion."

*Wheatland Tube Co. v. United States*, 161 F.3d 1365, 1369 (Fed. Cir. 1998) ("*Wheatland*

*Tube*").

### DISCUSSION

**I.      *Redetermination of the (k)(2) Factors***

This Court reviews Commerce's *Remand Results* and corresponding comments.

Commerce conceded that the record is inconclusive for the two factors of (iv) channels

of trade and (v) manner displayed and advertised.  *Remand Results* at 14-17.  Therefore

Commerce made its redetermination upon the three factors of (i) physical

characteristics, (ii) customer expectations, and (iii) ultimate use.  This Court reviews all

the factors upon which Commerce based its redetermination.  Each factor will be

addressed in turn.

A.   **Physical Characteristics of the Product**

Regarding the factor of physical characteristics of the product, Commerce

determined that "the primary element of the product is its box structure and lid,

elements consistent with certain storage chests." *Remand Results* at 7.  Plaintiff

countered that "[t]he shape and height of the Heritage Court Bench and its other

physical characteristics are entirely consistent with those of a bench."  Pl.'s Comments

in Opp'n to Final Results of Redetermination Pursuant to Court Order ("Pl.'s Opp'n") at

5.  Further, Plaintiff advanced that "[t]he fact that the Heritage Court Bench would

continue to fulfill its primary function as a bench even without its storage component

supports the contrary position that its function as a bench is the primary element."  Pl.'s

Opp'n at 7.  While it has a rectangular shape and the seat does function as a lid for the

storage area, the record clearly indicates that the Heritage Court Bench—case in point,

the name of the product—is undisputedly a bench.  Commerce conceded that the

Heritage Court Bench "has some, albeit limited, attributes of an excluded product" (*e.g.*,

a bench) but nevertheless concluded that the product "possesses all of the physical

characteristics of a subject chest."  *Remand Results* at 7.

Upon review of the numerous definitions of the subject chests in the *WBF*

*Order*, contrary to Commerce's conclusion, the Heritage Court Bench does not possess

<u>all</u> of the physical characteristics of any of the subject chests.  In fact, the Heritage Court

Bench only arguably fits into the residual provision of a footnoted definition of a

general chest.  *See WBF Order* at 332, n.5.  In contrast, the Heritage Court Bench not only

unambiguously falls under the explicit exclusion for a "bench" but also the basket

provision for all "seating furniture" under the list of items that is excluded from the

scope.  *Id*. ("The scope of the Petition excludes . . . benches . . . and other seating

furniture.")

    In support of its conclusion, Commerce stated that

> simply because one could sit on the product does not mean it should
> principally be viewed as seating furniture that is excluded from the scope.
> If that were the case, the language in the scope covering a large box with a
> lid would be nullified because many boxes with a flat lid could be used for
> seating even if they do not come with a padded leather covering.

*Remand Results* at 6.  Commerce's speculation is specious.  First, the product at issue

does indeed have a padded leather covering so speculating that the scope language

would be nullified if a product did not have a padded leather covering is fallacious.

Determining that the Heritage Court Bench is outside of the scope will not open the

floodgate of exclusions to any product that can be sat upon.  For example, a milk crate

can be sat upon but that does not make it seating furniture.  The determinative factor is

that the furniture is designed for seating.  The Heritage Court Bench is seating furniture

precisely and simply because it is designed with padded leather covering for seating.

The seating function is not incidental as Commerce insinuated in its conclusion.  The

record clearly indicates that seating is one of the main functions of the Heritage Court

Bench.  Furthermore, the record also demonstrates that the padded leather covering is

one of the main design features of the product.  The Court finds Commerce's reasoning

that the seating function is incidental or secondary to the Heritage Court Bench to be

arbitrary and capricious.  Therefore, Commerce's conclusion that the most prominent

physical characteristic is the box with the lid must be remanded for further

consideration.

###### B.    Expectations of the Ultimate Purchasers

Regarding the factor of customer expectations of the product, Commerce

admitted that there is "no direct evidence on the record regarding the expectations of

the ultimate purchasers." *Remand Results* at 8 (quoting *Final Scope Ruling* at 10).  Using

the same analysis from the *Final Scope Ruling*, Commerce submitted that

> record evidence does not demonstrate that the oblong (rectangular) shape
> and height of the product under consideration is necessarily atypical of the
> type of storage chest that might be used at the end of a bed . . . .  Moreover,
> it is reasonable to believe that bedroom storage chests with lids that are used
> at the end of beds would be wider than tall to be flush with the height and
> width of typical beds.

*Id.* at 8-9.  Plaintiff countered that Commerce ignored its advertisement stating "[t]he

Heritage Court Storage Bench offers timeless style and valuable storage for any room.

Place at the foot of your bed, in a hallway, or make this bench a part of your living room

ensemble."  Pl.'s Opp'n at 9 (quoting Scope Request, Ex. 9).  Commerce claimed that

"consumers can view the product on websites under a tab labeled 'Seating' or a tab labeled 'Bedroom.'" *Remand Results* at 9.  Plaintiff countered, however, that under the "Bedroom" tab, there is a "Benches" sub-tab, where the Heritage Court Bench is located.  Pl.'s Opp'n at 10.  Plaintiff further pointed out that there is a separate tab for "Bedroom Chests" and the Heritage Court Bench is not located there.  *Id*.  The Court agrees with Plaintiff that Commerce disregarded evidence placed on the record by Plaintiff.  From a plain reading of the scope language, the Court recognizes that mere placement of seating furniture in a bedroom does not remove it from the scope exclusion of the *WBF Order*.

Plaintiff contended that the Heritage Court Bench has the dimensions typical of a bench but atypical of a chest.  Pl.'s Opp'n at 10.  The Court agrees.  The dimensions listed in the scope of the *WBF Order* describe the subject chest as "a case piece taller than it is wide," but the Heritage Court Bench is just the opposite:  a bench wider (50 inches) than it is tall (19 inches).  *WBF Order* at 332, n.5.  Thus, Commerce's conclusion that the Heritage Court Bench has the dimensions typical of a subject chest is not supported by the record.  Rather there appears to be ample support on the record for Plaintiff's proposition that the Heritage Court Bench's most prominent features are the "padded leather top, the oblong shape and dimensions that make it suitable for one or more individuals to sit."  Pl.'s Opp'n at 12.  Therefore, the Court finds that the record

evidence does not support Commerce's conclusion that the customer expectations is for

storage over seating.  Commerce's determination  must be remanded for further

consideration.

### C.   Ultimate Use of the Product

Regarding the factor of ultimate use of the product, similar to the previous

factor, Commerce again admitted that there is "no direct evidence on the record

regarding how purchasers are actually using the Heritage Court Bench." *Remand*

*Results* at 10.  In lieu of ultimate use, Commerce "examined the record for evidence of

the use for which the product was designed." *Id*.  Noting that it "is tasked with

determining whether the product in question is sufficiently similar to subject

merchandise and thus subject to the order—not whether the product has absolutely no

features in common with non-subject or excluded merchandise," Commerce concluded

that "[w]hile the Heritage Court Bench does have a padded leather lid and could be

used for seating, this one ultimate use does not negate the ultimate uses of the Heritage

Court Bench that are similar to those of subject chests." *Remand Results* at 12, 13.

As noted in the Court's first decision, Commerce's conclusion is based on an

"impression." *Legacy I*, 807 F. Supp. 2d at 1359.  It appears that Commerce has not fully

considered the record, as instructed, but rather remains mired in its position regarding

this factor.  Plaintiff asserted that

> Commerce once again ignores substantial record evidence that the Heritage Court Bench is designed to be used <u>as a bench</u>, which could be placed at the foot of the bed or elsewhere in the house. Commerce presumes that the storage capability of the Heritage Court Bench it is primary function with no record support.

Pl.'s Opp'n at 14 (emphasis in original). Commerce even admitted that there is a "lack of direct record evidence regarding the ultimate use of the product," yet proceeded to declare that the storage function supersedes the seating function of the product in the absence of record evidence pertinent to this factor. *Remand Results* at 10. In the absence of direct evidence of how customers actually use this product, the only reasonable way to analyze this factor is to infer from the marketing evidence. The product is marketed as a "bench" or "seating furniture" that can be placed in the bedroom. Pl.'s Opp'n at 14. The fact that seating furniture can, and often is, located in the bedroom does not place it within the scope of the *WBF Order*. It is unreasonable to conclude that customers seeing a product marketed as a "bench" or "seating furniture" would primarily expect to use it as a bedroom chest. Commerce apparently made its conclusion based on conjecture and not on evidence, or even logical inference from the evidence. The Court finds that Commerce's conclusion that the Heritage Court Bench's primary use is as a bedroom chest is not supported by substantial evidence and must be remanded for further consideration.

### D. Channels of Trade in Which the Product Is Sold

Regarding the factor of channels of trade in which the product is sold,

Commerce determined that "the evidence regarding this criterion by itself is not

dispositive on the issue" because record evidence demonstrates that the Heritage Court

Bench and similar products "are sold through different channels of trade from those

used for subject merchandise as well as through identical channels of trade as those

used for subject merchandise." *Remand Results* at 14-15.  Plaintiff claimed that "[w]hile

there may be some overlap between this channel of trade and the channel of trade for

subject bedroom furniture, the record establishes that the channels are not the same"

and that the Heritage Court Bench and similar products are "*never* identified as

bedroom chests and [are], instead, always grouped with other seating furniture."  Pl.'s

Opp'n at 18 (emphasis in original).  The Court agrees with Plaintiff that, even if the

Heritage Court Bench is sold through overlapping channels of trade for subject wooden

bedroom furniture, it is still seating furniture, all of which is excluded.  Therefore, the

Court remands this factor of the channels of trade to Commerce to consider all of the

record evidence.

### E. The Manner in Which the Product Is Displayed and Advertised

Regarding the factor of the manner in which the product is displayed and

advertised, Commerce also determined that the record was inconclusive and thus not a

dispositive factor.  *Remand Results* at 17.  Commerce found that "the majority of features advertised about the Heritage Court Bench are the ones of a subject chest" but acknowledged that "the ability to use the chest for seating is also advertised and the product is labeled as a storage bench."  *Id.* at 17.  Plaintiff advocated that "the Heritage Court Bench is much more prominently advertised as a bench, and not a chest," Pl.'s Opp'n at 11, and asserted that "the record shows that storage benches are a widely recognized type of bench that must be within the unqualified exclusion for all benches and seating furniture," Pl.'s Opp'n at 18.  Further, Plaintiff declared that "Commerce attempts to minimize record evidence showing that the Heritage Court Bench is marketed and advertised as a bench."  *Id.*  The Court agrees with Plaintiff.  The subject chest was never advertised as a chest; it was advertised as seating furniture or a storage bench.  Parsing the phrase "storage bench," the Court analyzes that "storage" is merely an adjective that modifies the noun "bench," which is the focus of the phrase.  The record evidence supports Plaintiff's assertion that the Heritage Court Bench is indisputably a bench in terms of its marketing.  Consequently, the Court remands this factor of the manner in which the product is displayed and advertised for Commerce to fully reconsider.

> **F.    Remand of the (k)(2) Factors**

In its *Remand Results*, Commerce concluded that the record is inconclusive for

the two factors of (iv) channels of trade and (v) manner displayed and advertised and

therefore made its redetermination upon the three factors of (i) physical characteristics,

(ii) customer expectations, and (iii) ultimate use. *Remand Results* at 17-18.  However,

Commerce conceded that there was "no direct evidence on the record"for the factors of

(ii) customer expectations and (iii) ultimate use. *Remands Results* at 8, 10.  The Court

finds that Commerce's *Remand Results* regarding the (k)(2) factors are based on

conjecture and assumption, not based on evidence in the record.  Contrary to its

assertion that it "provided a robust explanation concerning how it weighed the

conflicting evidence in this case," Def.'s Reply to Pl.'s Comments Concerning Remand

Results ("Def.'s Reply") at 6, the Court finds that Commerce merely regurgitated its

original conclusions from the *Final Scope Ruling* without the requisite "reasoned analysis

or explanation for [its] decision" ordered by the Court in *Legacy I* and required by

*Wheatland Tube*, 161 F.3d at 1369.

Accordingly, similar to the results in *Legacy I*, the Court finds that the record

evidence does not support Commerce's conclusions that the factors under 19 C.F.R. §

351.225(k)(2)(i-iii) are within the scope of the order.  Further, considering the (k)(2)

factors—19 C.F.R. § 351.225(k)(2)(vi-v)—that Commerce found to be inconclusive, the

Court cannot find that Commerce took into  account "the breadth of the record

evidence" as instructed in *Legacy* I, 807 F. Supp. 2d at 1358.  Therefore, Commerce's

redetermination that the Heritage Court Bench is within the scope based on the (k)(2)

factors is unsustainable and must be set aside.  The case is remanded for a second time

for consideration of the (k)(2) factors.

II.        *Reconsideration of the (k)(1) Factors*

Given that the Heritage Court Bench appears to fall both in and out of the

scope language, making scope determination a vexed question for Commerce, the Court

returns to the basics of a scope determination and reconsiders the first step, the (k)(1)

factors, specifically taking another look at the scope language of the antidumping order.

The Court's goal is to ensure that the final determination is arrived at through thorough

and proper consideration of the record, which did not happen here, by both this Court

in its original decision and by Commerce in its previous determinations.  The Court

may reconsider its decision in an interim order "pursuant to its general authority, which

is recognized by USCIT Rule 54, to reconsider a non-final order prior to entering final

judgment."  *Union Steel v. United States*, 36 CIT ___, 836 F. Supp. 2d 1382, 1394 (2012);

USCIT R. 54(b).[4]  Upon further consideration, particularly the way the specific exclusion

interacts with the general inclusion, the Court is no longer convinced that the (k)(1)

---

[4] USCIT Rule 54(b), in pertinent part, provides:

[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and the parties rights and liabilities.

factors are non-dispositive.

In a scope determination, the plain language of the order clarifies whether the item at issue is unambiguously included or excluded in the scope. *Novosteel SA v. United States*, 284 F.3d 1261, 1266 (Fed. Cir. 2002). It is well-established that the cornerstone in any scope determination is the language of the order itself. *Walgreen Co. of Deerfield, IL v. United States*, 620 F.3d 1350, 1357 (Fed. Cir. 2010). Commerce may not impermissibly expand the scope of the order. *Eckstrom Indus., Inc. v. United States*, 254 F.3d 1068, 1072 (Fed. Cir. 2001). Issues regarding scope arise because "the descriptions of subject merchandise contained in [Commerce's] determinations must be written in general terms." 19 C.F.R. § 351.225(a). Accordingly, scope inclusions are written in general terms and then specific exclusions are carved out from the general terms. Some exclusions are qualified and some are not.

In *Legacy I*, this Court noted that the *Final Scope Ruling* determined that the "Heritage Court Bench had characteristics of both a chest—which would be included within the scope of the order—and also a bench—which would be excluded from the order." *Legacy I*, 807. F. Supp. 2d at 1356. While arguably falling under a residual definition of a chest within the general scope language, the Heritage Court Bench is unambiguously a bench or seating furniture as listed in the scope exclusions. *WBF Order* at 332; *see also Remand Results* at 3, Pl.'s Opp'n at 2. Commerce acknowledged that

the *WBF Order* defines chests but not benches.  *Remand Results* at 3.  Analyzing the scope

language, only certain specified chests are included in the scope, but all benches—in fact

all seating furniture—are unequivocally excluded from the scope.  *WBF Order* at 332.

Because the scope language of an order starts with general inclusions and then

carves out specific exclusions, when a product is generally included in a residual

provision but yet specifically excluded from the scope, the specific should trump the

general.  The purpose of the explicit exclusions is to narrow the expanse of the general

scope.  Unequivocal exclusions are not loopholes; they are argued for and intentionally

omitted from the scope.  *Wheatland Tube*, 161 F.3d at 1371.  To "allow Commerce to

assess antidumping duties on products intentionally omitted from the ITC's injury

investigation" would "frustrate the purpose of the antidumping laws."  *Id*. (citing 19

U.S.C. § 1673 (1994) (requiring an injury determination by the ITC before the imposition

of antidumping duties).

In the instant case, Plaintiff asserts that the product at issue is a "storage

bench" while Commerce avers that it is a "bedroom chest."  The scope language

includes various types of "chests."  Commerce argues the Heritage Court Bench falls

under the general category of chest, which is the fifth enumerated item of subject

merchandise under the scope language in the *WBF Order*: (5) chests-on-chests, highboys,

lowboys, chests of drawers, <u>chests</u>, door chests, chiffoniers, hutches and armoires.  *WBF*

*Order* at 332 (emphasis added). Every chest listed under number five includes a footnote, which provides a narrative definition of the type of chest that is covered. Commerce determined that the Heritage Court Bench fits under the following definition:

> A chest is typically a case piece taller than it is wide featuring a series of drawers and with or without one or more doors for storing clothing. The piece can either include drawers or be designed as a large box incorporating a lid.

*Id*. at 332, n.5. Looking at the plain language, the Court notes that the Heritage Court Bench is not "a case piece taller than it is wide featuring a series of drawers." Commerce determined, however, that the Heritage Court Bench fits squarely in the last phrase "designed as a large box incorporating a lid." *Remand Results* at 4. While the Court agrees that the shape of the Heritage Court Bench resembles a large box, Plaintiff has placed on the record that the Heritage Court Bench is designed as seating furniture in the shape of a large box. Further, the Court notes that the plain reading of footnote 5 requires that a "case piece" be taller than it is wide, which does not encompass the Heritage Court Bench, and then be designed as a large box incorporating a lid, which generally describes the Heritage Court Bench. Moreover, the Court notes that the "lid" is actually a padded leather bench designed as seating furniture.

While it ambiguously fits under the qualified definition of chest found in footnote 5, the Heritage Court Bench unambiguously fits under the unqualified term

"benches."  The scope specifically excludes benches, listed as the third item under the

first exclusion: "(1) Seats, chairs, <u>benches</u>, couches, sofas, sofa beds, stools <u>and other</u>

<u>seating furniture</u>."  *WBF Order* at 332 (emphasis added).  The third enumerated item

under the first exclusion is "benches" and there is even a basket provision for all other

kinds of "seating furniture" under the scope exclusions, which highlights the intention

that all seating furniture is to be excluded from the scope.  *Id.*  The exclusion of sofabeds

provides insight that the key to the seating furniture exclusion is that an item—whether

or not it has a typical bedroom-type function—have a seating function.  Plaintiff pointed

out that "the exclusion for benches (and other seating furniture) within the scope of the

WBF Order is unqualified" and argued that "Commerce cannot seek now to interpret

the WBF Order contrary to its plain terms."  Pl.'s Opp'n at 6.  Plaintiff proffered that "all

the physical features of the Heritage Court Bench are consistent with that of a bench,

and that the cedar-lined storage area is merely one feature it shares in common with

some storage furniture." Pl.'s Opp'n at 5.  The Court agrees.

Commerce stated that it "has determined in the past that additional features

that do not change the primary nature of an 'in-scope' product do not serve to move

that product outside of the scope of the order."  *Remand Results* at 5 (quotations

omitted) (citing *Color Television Receivers from Taiwan: Notice of Final Scope Ruling Couch*

*Master International Corporation*, 63 Fed. Reg. 805, 806 (Jan. 7, 1998) ("*Color TVs*")).

However, *Color TVs* involved a product that was "neither specifically included . . . nor excluded" while the product in the instant case is specifically excluded from the scope. 63 Fed. Reg. at 806.  Therefore, *Color TVs*  does not support Commerce's position.  When a product is "specifically excluded from the antidumping duty order, that order could not be interpreted to cover it."  *Nippon Steel Corp. v. United States*, 219 F.3d 1348 (Fed. Cir. 2000) (explaining the holding of *Wheatland Tube*).

        While this Court originally sustained Commerce's determination that the (k)(1) factors are not dispositive in *Legacy I*, upon review of the *Remand Results* and upon further consideration, this Court remands this case for Commerce to reconsider the application of both the (k)(1) and (k)(2) factors because Commerce's *Remand Results* that the Heritage Court Bench falls within the scope are not supported by evidence on the record.  The Court instructs Commerce to fully and objectively reconsider the record, make redeterminations based on the evidence in the record, and consistent with this opinion, and not merely repeat the original conclusions from the *Final Scope Ruling*.

CONCLUSION

        For the foregoing reasons, it is hereby

        **ORDERED** that Commerce's determination that Legacy's Heritage Court Bench falls within the scope of the *WBF Order* is SET ASIDE, and it is further

        **ORDERED** that Commerce's determination that the factors set out in 19 C.F.R.

§ 351.225(k)(1) are not dispositive of this scope determination is reopened for

reconsideration, and it is further

     **ORDERED** that this case is remanded to Commerce with instructions to make

a redetermination that reconsiders scope language under 19 C.F.R. § 351.225(k)(1) in

light of the Court's opinion, and it is further

     **ORDERED** that this case is remanded to Commerce with instructions to make

a redetermination that reconsiders each of the factors set out in 19 C.F.R. § 351.225(k)(2)

in light of the Court's opinion, and it is further

     **ORDERED** that the results of this redetermination on remand shall be filed no

later than **Thursday, November 15, 2012**, and it is further

     **ORDERED** that Plaintiff may file comments on such *Remand Results*, not to

exceed 20 pages, and that such comments shall be filed no later than **Thursday,**

**December 13, 2012**, and it is further

     **ORDERED** that Defendant may file a reply to Plaintiff's comments, not to

exceed 15 pages, and that such reply shall be filed no later than **Thursday, January 10,**

**2013.**

/s/ Gregory W. Carman
Gregory W. Carman, Judge

Dated:   September 19, 2012
        New York, New York